RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0340p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 20-5748

KEITH PARIS RUFFIN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:09-cr-00045-15—Robert Leon Jordan, District Judge.

Argued: October 21, 2020

Decided and Filed: October 26, 2020

Before: BATCHELDER, GRIFFIN, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Matthew Ahn, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Matthew Ahn, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, Donald Wayne Taylor, UNITED STATES ATTORNEY'S OFFICE, Greeneville, Tennessee, for Appellee.

_____

## OPINION

_____

MURPHY, Circuit Judge. Keith Ruffin, a federal prisoner serving a lengthy prison term, suffers from many health conditions that he asserts increase his COVID-19 risks while in prison.

He thus seeks "compassionate release" under 18 U.S.C. § 3582(c)(1)(A). Traditionally, only the Bureau of Prisons could file compassionate-release motions, but the First Step Act of 2018 now permits defendants to file them too. This relief has always required the movant to identify "extraordinary and compelling reasons," a phrase that the Sentencing Commission has defined in commentary accompanying its relevant policy statement. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (2018). Ruffin makes no claim that he qualifies for relief under any of the "extraordinary and compelling reasons" identified in the Commission's commentary. He instead argues that, after the First Step Act, district courts may find extraordinary and compelling reasons beyond those listed in this commentary. Although Ruffin raises an important legal question that has divided the courts, we need not resolve it in this case. Even when extraordinary and compelling reasons exist, the statute leaves district courts with discretion to deny relief under a balancing of the sentencing factors in 18 U.S.C. § 3553(a). And here, the district court denied relief to Ruffin not just because no extraordinary and compelling reasons existed, but also because the § 3553(a) factors weighed against his release. The district court did not abuse its discretion when balancing those factors, so we affirm on that alternative discretionary ground.

I

A

Along with several coconspirators, Ruffin participated in a broad drug-trafficking scheme out of Johnson City, Tennessee. *United States v. Miller*, 562 F. App'x 272, 277–79 (6th Cir. 2014). In 2010, a jury convicted him of four offenses: conspiring to distribute at least five kilograms of powder cocaine, conspiring to distribute at least 50 grams of crack cocaine, conspiring to launder illicit drug proceeds, and conspiring to tamper with a witness. The district court calculated Ruffin's guidelines range as between 30 years' and life imprisonment. It chose a 30-year sentence. *Id.* at 279.

We affirmed Ruffin's convictions. *See id.* at 286–90, 312. But we vacated his sentence. *Id.* at 310–11. The district court had held that the Fair Sentencing Act of 2010—which increased the quantity of crack cocaine necessary to trigger certain mandatory-minimum sentences—did not apply to Ruffin. *Id.* at 311. The Supreme Court later clarified that the Act applied to

defendants, like Ruffin, whose illegal conduct occurred before the Act's passage but whose sentencing arose after it. *Dorsey v. United States*, 567 U.S. 260, 263–64 (2012). While the Act did not change Ruffin's guidelines range, we noted that the district court might still consider a downward variance in light of the Act's purposes. *Miller*, 562 F. App'x at 311. We also pointed out that Ruffin's counsel had argued that "his medical condition merited special consideration." *Id.*

On remand, the district court again calculated Ruffin's guidelines range as between 30 years' and life imprisonment. And Ruffin's counsel again argued for a downward variance based on his serious health conditions. Ruffin had a blood disorder that had caused him to suffer four strokes. He also regularly used a wheelchair due to paralysis on his left side.

When balancing the sentencing factors in 18 U.S.C. § 3553(a), the district court chose a below-guidelines sentence of 25 years in prison. Starting with the nature of the offense, the court explained that "this was a major drug trafficking conspiracy" and that Ruffin had trafficked in far greater quantities than the minimum amounts identified in the jury verdict. It also expressed concern over Ruffin's witness-tampering conviction, describing how Ruffin had discussed sending "goons" to attack a cooperating witness. Turning to Ruffin's characteristics, the court highlighted his many prior convictions and acknowledged that he was "suffering from the effects of strokes." But it discounted the mitigating value of his health conditions because they predated his current offenses and had not hindered his ability to commit them. The court nevertheless opted to grant a downward variance for two other reasons: because of Ruffin's rehabilitation efforts in prison and because of a pending guidelines amendment that would decrease his guidelines range.

B

Ruffin has now served 10 years of his 25-year sentence. The Bureau of Prisons anticipates it will release him in November 2031. In May 2020, however, Ruffin sought early "compassionate release" under 18 U.S.C. § 3582(c)(1)(A). Like many others, Ruffin understandably worries about the risks from COVID-19. Unlike many others, he says that his health conditions exacerbate those risks. In addition to the blood disorder that caused his strokes

and partial paralysis, Ruffin suffers from heart problems, high blood pressure, high cholesterol, and blood clots. He thus argued that the general risks from COVID-19 combined with his unique health problems provided the "extraordinary and compelling reasons" needed for relief under § 3582(c)(1)(A).

The district court initially found that Ruffin failed to exhaust his administrative remedies because he had not waited 30 days from the time that he sought relief with the Bureau of Prisons before seeking judicial relief. It held his motion in abeyance.

After 30 days passed, the district court denied Ruffin's motion on the merits. It invoked three grounds. The court initially held that Ruffin's health concerns did not provide "extraordinary and compelling reasons" for relief. The Sentencing Commission defined this phrase to cover only medical conditions that substantially diminish a defendant's ability to provide "self-care" in prison. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Ruffin could adequately care for himself. And COVID-19 did not change things because the Bureau of Prisons' preventive measures had contained the spread of the disease in the prison housing Ruffin.

Next, the court noted that the Sentencing Commission's guidance required Ruffin to show that, if released, he would not be a "danger" to the community. U.S.S.G. § 1B1.13(2). The court found that Ruffin also could not satisfy this element because of his extensive criminal record.

Lastly, the court held that the § 3553(a) factors counseled against reducing Ruffin's sentence. The court reiterated that Ruffin had only served a fraction of that sentence and that his immediate release would not reflect the seriousness of his offenses.

II

Since the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from "modify[ing] a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, ch. II, § 212, 98 Stat. 1837, 1998. Section 3582(c) does, however, identify a few exceptions. As relevant here, a court may

grant so-called "compassionate release" by reducing a defendant's sentence in "extraordinary" circumstances:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). (The statute includes a separate basis for compassionate release tied to the defendant's age and years in prison, but Ruffin does not rely on this provision. *Id.* § 3582(c)(1)(A)(ii).) Section 3582(c)'s text identifies both the process for bringing these reduction-of-sentence motions and the substantive requirements for granting them.

## A

We start with the process. Over the years, district courts rarely considered these motions. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 395–96 (E.D. Pa. 2020). That is because § 3582(c)(1)(A) historically permitted a court to grant relief *only* "upon motion of the Director of the Bureau of Prisons[.]" 18 U.S.C. § 3582(c)(1)(A)(i) (2012). When the Bureau of Prisons refused to file a motion, therefore, a defendant could not separately file one. *See United States v. Alam*, 960 F.3d 831, 834–35 (6th Cir. 2020). Not only that, the defendant could not use other causes of action (such as a habeas petition) to obtain judicial review of the Bureau of Prisons' refusal to file the reduction-of-sentence motion. *See Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (per curiam) (citing cases).

Things changed with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. It amended § 3582(c)(1)(A) to allow defendants to file reduction-of-sentence motions when the Bureau refused to do so. After the phrase "upon motion of the Director of the Bureau of Prisons," the Act added a clause permitting a defendant to file the motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* § 603(b), 132 Stat. at 5239. As this text makes clear, defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons. *See Alam*, 960 F.3d at 833–35.

Here, the district court found that Ruffin failed to exhaust his administrative remedies and did not wait the required 30 days to sue, so it held his motion in abeyance. In *Alam*, we suggested that unexhausted motions should be dismissed without prejudice rather than held "until the 30-day window ran its course[.]" *Id.* at 836. But the government did not raise any exhaustion issue on appeal. We thus do not consider this issue further because it is not jurisdictional. *Id.* at 833.

B

Both before and after the First Step Act's procedural amendment, the statute has identified three substantive requirements for granting relief. It provides that a district court "may reduce the term of imprisonment" "if it finds" that two conditions exist. 18 U.S.C. § 3582(c)(1)(A)(i). The statute also includes a third discretionary factor that a court should consider. *Id.* § 3582(c)(1)(A).

Statutory Requirement One: Before reducing a sentence, the court initially must "find[]" that "extraordinary and compelling reasons warrant such a reduction[.]" *Id.* § 3582(c)(1)(A)(i). Section 3582(c)(1)(A) does not define "extraordinary and compelling reasons." In the Sentencing Reform Act, Congress delegated the task of defining this phrase to the Sentencing Commission. 98 Stat. at 2023. A provision listing the Commission's duties notes that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). This section does, however, identify one reason that Congress precluded: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

Although Congress ordered this guidance back in 1984, the Commission did not issue the relevant policy statement in U.S.S.G. § 1B1.13 until 2006. 71 Fed. Reg. 28063, 28063–64 (May 15, 2006). And § 1B1.13 merely repeats the statutory text for this requirement: It says that the court may reduce a sentence if it determines that "[e]xtraordinary and compelling reasons warrant the reduction[.]" U.S.S.G. § 1B1.13(1)(A). The Commission added content to this requirement in § 1B1.13's commentary. The original Application Note 1 subdelegated the task of defining the phrase to the Bureau of Prisons, stating that the Bureau's decision "that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such[.]" 71 Fed. Reg. at 28063. Over time, the Commission identified an evolving list of reasons. *See* 81 Fed. Reg. 27262, 27262 (May 5, 2016); 72 Fed. Reg. 28558, 28558 (May 21, 2007). Today, Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

As relevant to Ruffin, Application Note 1 provides that extraordinary and compelling reasons exist if a defendant has a "serious physical or medical condition" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A)(ii). And the catchall treats as "extraordinary and compelling" any other reason that the Bureau of Prisons identifies: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [Commission's other] reasons[.]" *Id.* § 1B1.13 cmt. n.1(D).

Statutory Requirement Two: Before granting a reduced sentence, the court next must "find[]" "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). This factor thus leads us right back to § 1B1.13. Beyond the extraordinary-and-compelling-reasons requirement, this policy statement also requires a district court to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and that "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(2)–(3).

Statutory Requirement Three: Even if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with § 1B1.13, the court may not grant the reduction before "considering the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). These ubiquitous factors consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public. *Id.* § 3553(a)(1)–(2).

This last requirement confirms an overarching point: The district court has substantial discretion. The statute says that the district court "may" reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so. *See United States v. Keefer*, __ F. App'x __, 2020 WL 6112795, at *3 (6th Cir. Oct. 16, 2020). Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" § 3553(a) factors do not justify it. And "[i]n a reduction-of-sentence proceeding, as at sentencing, the district court 'is best situated to balance the § 3553(a) factors.'" *Id.* (quoting *United States v. Kincaid*, 802 F. App'x 187, 189 (6th Cir. 2020) (order)); *see Gall v. United States*, 552 U.S. 38, 51 (2007).

Given the discretionary nature of a reduction-of-sentence decision, we review a district court's denial for an abuse of discretion. *See Keefer*, 2020 WL 6112795, at *3. The court might abuse its discretion if, for example, its "denial was based on a purely legal mistake" such as a misreading of the extraordinary-and-compelling-reasons requirement. *United States v. Richardson*, 960 F.3d 761, 764 (6th Cir. 2020) (per curiam); *see, e.g.*, *United States v. Beamus*, 943 F.3d 789, 791–92 (6th Cir. 2019) (per curiam). In addition, because the government does not argue for more restrictive appellate review, we may assume in this case that a district court might abuse its discretion if it engaged in a substantively unreasonable balancing of the § 3553(a) factors. *See Richardson*, 960 F.3d at 764–65; *cf. United States v. Smith*, 959 F.3d 701, 703–04 (6th Cir. 2020) (order); *United States v. Marshall*, 954 F.3d 823, 829–31 (6th Cir. 2020).

III

To recap, the district court denied Ruffin's motion under all three statutory requirements: (1) because Ruffin did not identify extraordinary and compelling reasons; (2) because he failed

to show that he would not be a danger if released; and (3) because he was not entitled to relief under a balancing of the § 3553(a) factors. The first of these reasons raises a difficult legal question that we merely flag for future cases. We also need not say anything on the second factor. That is because we may affirm the denial of relief based on the third discretionary rationale alone.

## A. Extraordinary and Compelling Reasons

The district court held that Ruffin's health conditions, even when combined with the risks from COVID-19, did not "substantially diminish[]" his ability to provide "self-care" in prison and so did not fall within the Sentencing Commission's commentary about when medical conditions might justify relief. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Ruffin does not challenge the district court's conclusion that his conditions fail to meet Application Note 1(A). Rather, Ruffin argues that, after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in the commentary (such as a once-in-a-century pandemic). The government responds that Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons.

This legal question has sharply divided the courts. *See United States v. Brooker*, __ F.3d __, 2020 WL 5739712, at *5 (2d Cir. Sept. 25, 2020). Some hold that they must stick with the reasons listed in Application Note 1 and cannot identify other "extraordinary and compelling" reasons on their own. *See, e.g.*, *United States v. Baye*, __ F. Supp. 3d __, 2020 WL 2857500, at *9 (D. Nev. June 2, 2020); *United States v. Garcia*, 457 F. Supp. 3d 651, 655–56 (C.D. Ill. 2020); *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019). Others, including the Second Circuit, hold that district courts may rely on reasons that they view as sufficiently "extraordinary and compelling" even if those reasons do not fall within Application Note 1. *See Brooker*, 2020 WL 5739712, at *5–7; *United States v. Williams*, 2020 WL 5834673, at *5–8 (W.D. Va. Sept. 30, 2020); *Rodriguez*, 451 F. Supp. 3d at 395–400; *cf. United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020).

It is easy to see why a conflict has emerged. For starters, courts have read the statutory text as cutting in both directions. On the one hand, Congress delegated to the Sentencing

Commission—not the courts—the task of "describ[ing] what should be considered extraordinary and compelling reasons[.]" 28 U.S.C. § 994(t). And Congress unambiguously told the courts that relief must be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). As § 1B1.13's title makes clear, it is the policy statement that applies to a "reduction in term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)." To be sure, this policy statement continues to indicate that a court may reduce a sentence only "[u]pon motion of the Director of the Bureau of Prisons," U.S.S.G. § 1B1.13 & cmt. n.4, and the First Step Act's procedural change rendered that aspect of § 1B1.13 outdated. But the First Step Act did not touch the substantive requirements for granting compassionate release. As some courts have held, therefore, Application Note 1's four existing extraordinary and compelling reasons might comfortably coexist with the First Step Act's purely procedural change. *See Lynn*, 2019 WL 3805349, at *4. And "[i]f the policy statement needs tweaking in light of [the Act], that tweaking must be accomplished by the Commission, not by the courts." *Id.*

On the other hand, § 3582(c)(1)(A)'s second requirement compels courts to follow the "applicable" policy statements issued by the Commission. Other courts have highlighted that § 1B1.13 continues to address only motions filed by the *Bureau of Prisons*. Because the policy statement says nothing about *defendant*-filed motions, these courts have not viewed § 1B1.13 as "applicable" (that is, "relevant" or "appropriate") to these motions. *See Webster's New World Dictionary of American English* 67 (3d coll. ed. 1988) (defining "applicable"). With no "applicable" policy statement for motions by defendants, these courts conclude that a district court may freely identify extraordinary and compelling reasons on its own. *Brooker*, 2020 WL 5739712, at *5–6. That conclusion would not be unprecedented: The Commission did not issue *any* policy statement to govern reduction-of-sentence motions between 1984 and 2006.

Likewise, courts have read basic administrative-law principles as cutting both ways. On the one hand, the Supreme Court has already held that courts must follow the Commission's policy statements in this *sentence-modification* context even after it made the guidelines advisory in the *sentencing* context. *See Dillon v. United States*, 560 U.S. 817, 824–30 (2010) (discussing *United States v. Booker*, 543 U.S. 220 (2005)). And a delegation to the Commission to identify the circumstances in which courts may grant a discretionary *benefit* to defendants (a reduction in

their otherwise final sentences) raises fewer constitutional concerns. *See id.*; *cf. Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 9–11 (1979) (parole). In addition, the Supreme Court has treated the Commission's commentary interpreting its guidelines (like Application Note 1 in U.S.S.G. § 1B1.13) as analogous to an agency's guidance interpreting its regulations. *Stinson v. United States*, 508 U.S. 36, 44–45 (1993). *Stinson* would suggest that we should defer to the commentary's reading of an ambiguous guideline if the guideline can "bear the construction" the commentary gives it. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (quoting *Stinson*, 508 U.S. at 46); *cf. United States v. Owen*, 940 F.3d 308, 314 (6th Cir. 2019). And some might view the phrase "extraordinary and compelling" as sufficiently open-ended to permit Application Note 1's interpretation. *Cf. United States v. Tufele*, 2020 WL 5223775, at *4–5 (D. Haw. Sept. 1, 2020).

On the other hand, the policy statement's text in § 1B1.13(1)(A) merely "parrots the statutory text" in § 3582(c)(1)(A)(i) by requiring extraordinary and compelling reasons. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 n.5 (2019). The policy statement itself thus offers no details about that phrase's meaning. The Commission instead put the details in Application Note 1 (perhaps because of the less extensive procedural hurdles to adopt and change this commentary, *see Havis*, 927 F.3d at 386). But the Supreme Court has suggested that an agency's interpretation of this type of "parroting" regulation should not receive deference. *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). Not only that, Application Note 1's catchall identifies "the Director of the Bureau of Prisons" as the person that decides if other extraordinary and compelling reasons exist apart from the three examples. U.S.S.G. § 1B1.13 cmt. n.1(D). Yet where does the text of the statute or the policy statement give the *Bureau of Prisons* this authority to identify other reasons? Both § 3582(c)(1)(A) and § 1B1.13 instead indicate that *courts* should "find[]" or "determine[]" that those reasons exist. And 28 U.S.C. § 994(t) tells the Sentencing Commission (not the Bureau of Prisons) to describe the relevant "criteria" and identify the specific "examples."

At day's end, we need not (and do not) pick a side in this debate. For the reasons explained below, the district court in this case did not abuse its discretion in denying relief even if it could rely on extraordinary and compelling reasons other than those listed in Application Note 1.

## B.  The § 3553(a) Factors

Even if Ruffin could prove that the district court mistakenly limited itself to the commentary's list of extraordinary and compelling reasons, that legal conclusion would not entitle him to a reversal.  Unlike in other cases in which a district court relied solely on that legal ruling, *cf. Brooker*, 2020 WL 5739712, at *8, the district court in this case alternatively denied Ruffin relief based on a discretionary balancing of the § 3553(a) factors.  So Ruffin must show that the court abused its discretion when undertaking this balancing.  He cannot do so.

We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if "extraordinary and compelling" reasons would otherwise justify relief.  *See, e.g.*, *Keefer*, 2020 WL 6112795, at *5; *United States v. McGuire*, 822 F. App'x 479, 480 (6th Cir. 2020); *United States v. Austin*, __ F. App'x __, 2020 WL 5201632, at *2–3 (6th Cir. Sept. 1, 2020) (order); *see also United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020); *United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020).  When reviewing such a discretionary decision, we consider the entire record, including the court's balancing of the § 3553(a) factors at the original sentencing.  *See Chavez-Meza v. United States*, 138 S. Ct. 1959, 1966–67 (2018).  And a district court does not abuse its discretion in denying a sentence reduction as long as "the record as a whole satisfies us that [it] 'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority.'"  *Id.* at 1967 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)); *see McGuire*, 822 F. App'x at 480.

That is the case here.  When considered with the whole record, the district court's decision more than adequately explained why the § 3553(a) factors did not support a sentence reduction.  As the court explained, Ruffin has yet to serve even half of his 25-year sentence.  And the court had already varied downward by five years from Ruffin's guidelines range when imposing that lengthy sentence.  We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction.  *Kincaid*, 802 F. App'x at 188; *see* 18 U.S.C. § 3553(a)(2)(A).

The district court next reasonably relied on the need "to protect the public from further crimes of the defendant[.]" 18 U.S.C. § 3553(a)(2)(C). What the court said at Ruffin's original sentencing it reiterated during his sentence-reduction proceedings: Although Ruffin's health conditions might be thought to reduce the risk that he would reoffend, Ruffin had engaged in his crimes while suffering from those conditions. The conditions thus did not previously stop him from his criminal activity. And that activity included not just drug offenses, but also threatening to harm a cooperating witness.

Lastly, the court adequately considered Ruffin's "history and characteristics[.]" *Id.* § 3553(a)(1). It highlighted his long list of crimes, including his weapons and theft convictions. It also adequately acknowledged his health. Despite the serious nature of his health conditions, Ruffin was receiving regular medical treatment to manage those conditions. The court also considered the risks from COVID-19, but explained that the prison had adopted sufficient preventive measures to slow the spread. *See Austin*, 2020 WL 5201632, at *2.

In response, Ruffin claims that the district court abused its discretion because it failed to consider his rehabilitation efforts in prison and "relied exclusively on pre-rehabilitation facts to state that the § 3553(a) factors did not merit release." Appellant Br. 13. Not so. The court had already factored some of those rehabilitation efforts into account when imposing its 25-year sentence. Recall that the court imposed that sentence at a second sentencing hearing after Ruffin had already spent substantial time in prison. And it based its downward variance from its earlier 30-year sentence in part on Ruffin's rehabilitation. The original sentence thus reflected some of the efforts that Ruffin says the court overlooked. *Cf. Keefer*, 2020 WL 6112795, at *5–6. In addition, Ruffin's conduct while in prison did not all run in the same direction. When denying a sentence reduction, the court pointed out how prison authorities had disciplined Ruffin "as recently as July 2019 for possessing an unauthorized item and being insolent to staff." Lastly, Congress has made clear that rehabilitation "alone" does not provide a proper basis for relief. 28 U.S.C. § 994(t). All told, then, the court reasonably concluded that Ruffin's rehabilitation efforts, when considered alongside the other § 3553(a) factors, did not warrant any greater reduction of his already below-guidelines sentence.

We affirm.