RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LISA M. ELIAS,

*Defendant-Appellant*.

⎫
⎪
⎪
⎪
⎬  No. 20-3654
⎪
⎪
⎪
⎭

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:16-cr-00112-3—Dan A. Polster, District Judge.

Argued:  November 19, 2020

Decided and Filed:  January 6, 2021

Before:  McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Matthew Ahn, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant.  Vanessa V. Healy, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Matthew Ahn, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant.  Vanessa V. Healy, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

McKEAGUE, Circuit Judge.  The passage of the First Step Act in 2018 expanded access to compassionate release by allowing inmates to bring compassionate-release motions on their own behalf.  Prior to that Act, only the Bureau of Prisons could bring compassionate-release

motions.    However, the removal of the Bureau of Prisons as the sole gatekeeper to compassionate release raised questions of whether the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, remained applicable to inmate-filed motions.  This Court spoke on those questions recently, stating that § 1B1.13 is not applicable to inmate-filed compassionate-release motions.  *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).  We follow that reasoning here.

In 2016, Lisa Elias was convicted of a drug-related conspiracy.  This year, she utilized the expanded compassionate release process by moving for compassionate release on her own behalf, arguing that her hypertension placed her at an elevated risk of death if she were to contract COVID-19.  The district court denied her motion, finding that Elias failed to show "extraordinary and compelling reasons" for a sentence reduction as the statute requires.  18 U.S.C. § 3582(c)(1)(A)(i).  Elias claims that the district court abused its discretion in denying her motion.  We find her arguments to be without merit and **AFFIRM**.

**I**

Before granting a compassionate-release motion, a district court must engage in a "three-step inquiry:" the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."  *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  If each of those requirements are met, the district court "may reduce the term of imprisonment," but need not do so.  18 U.S.C. § 3582(c)(1)(A).

Congress provided no statutory definition of "extraordinary and compelling reasons," instead delegating that task to the Sentencing Commission.  *See* 28 U.S.C. § 994(t).  Despite this command, the Sentencing Commission released its only policy statement related to compassionate-release motions in 2006, U.S.S.G. § 1B1.13, over two decades after § 3582(c) was enacted.  That statement describes four categories of extraordinary and compelling reasons.  The first three are related to an inmate's serious medical conditions, age, and status as a caregiver.  U.S.S.G. § 1B1.13, cmt. n.1(A)–(C).  Finally, the last category is a catch-all provision

titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

Historically, only the Bureau of Prisons ("BOP") could bring compassionate-release motions. *See Jones*, 980 F.3d at 1100. And the BOP rarely exercised this power. "A 2013 report from the Office of the Inspector General revealed that, on average, only 24 incarcerated people per year were released on BOP motion." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). Not only that, the program was plagued by mismanagement, as the BOP's "implementation of the program . . . [was] inconsistent and result[ed] in ad hoc decision making," and the BOP "ha[d] no timeliness standards for reviewing . . . requests." *Id.* at 231–32 (alterations in original) (quotation omitted).

Recognizing this problem, Congress sought to expand compassionate release through the passage of the First Step Act in December 2018. *See Jones*, 980 F.3d at 1104–05 (discussing how "a bipartisan coalition in Congress sought to boost grants of compassionate release by reforming § 3582(c)(1)(A)'s procedures"). The key step Congress took was removing "the BOP from its preclusive gatekeeper position" by permitting inmates to file compassionate-release motions on their own behalf. *Id.* at 1105; *see also United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (noting that the First Step Act "remove[d] the Bureau of Prisons from its former role as a gatekeeper over compassionate-release petitions").

However, this significant change by Congress called into question whether § 1B1.13 remained an "applicable policy statement" for compassionate-release motions brought directly by inmates, as certain portions of the guideline suggested it only referred to motions brought by the BOP. If the guideline remained applicable, district courts would be precluded from determining extraordinary and compelling reasons on their own initiative and would be bound by the reasons listed in the guideline. *See United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020).

This "raise[d] a difficult legal question" that has divided district courts since the passage of the First Step Act. *Id.* This Court recently spoke on that question, stating that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates. *Jones*, 980 F.3d at 1108–11. The text of the guideline, along with the clear congressional purpose in the First Step Act of removing the BOP from its gatekeeping role, led this Court to its conclusion. *See id.* (discussing the purpose of the First Step Act and noting that "[t]he first sentence of § 1B1.13 predicates the entire policy statement on the Director of the BOP's filing a motion for compassionate release"). The statement in *Jones* that § 1B1.13 was inapplicable to inmate-filed compassionate-release motions aligned with the Second Circuit, the first Circuit to rule on the matter, as well as the majority of district courts. *See Brooker*, 976 F.3d at 234. Since *Jones*, the Seventh Circuit and Fourth Circuit have reached the same conclusion. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *McCoy*, 981 F.3d at 281–82.

Thus, there has emerged a newfound consensus among the courts, and the government provides no compelling reason for us to disturb the consensus of our sister Circuits. Therefore, we hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions. Further, we clarify that, as in *Jones* and *Ruffin*, district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. *See Jones*, 980 F.3d at 1108 (affirming the denial of compassionate release based upon the district court's analysis of the § 3553(a) factors); *Ruffin*, 978 F.3d at 1006 (holding that "we may affirm the denial of [compassionate release] based on the third discretionary rationale alone"). Of course, in granting a compassionate-release motion, district courts must address all three steps. *See Ruffin*, 978 F.3d at 1004–05 (describing the process for reducing a sentence under compassionate release). And, in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define "extraordinary and compelling" on their own initiative. *See Jones*, 980 F.3d at 1111; *Ruffin*, 978 F.3d at 1007 (suggesting that without an "'applicable' policy statement for motions by defendants . . . district court[s] may freely identify extraordinary and compelling reasons").

Having clarified the analytical framework for reviewing denials of compassionate-release motions, we proceed to the merits of Lisa Elias's claim that the district court abused its discretion in denying her motion.

**II**

Beginning in 2015 and extending into 2016, Elias was a member of a drug-possession and distribution conspiracy. After an FBI investigation, a grand jury indicted Elias and nine other defendants. On September 19, 2016, Elias pled guilty and admitted to her role in the conspiracy. On January 12, 2017, the district court sentenced Elias to 108 months in prison. She is currently serving her sentence at FPC Alderson and has a projected release date of November 8, 2024.

After serving three years for her offense, Elias filed a pro se "Emergency Motion for Immediate Release Due to COVID-19" on April 30, 2020. On June 6, 2020, after this Court appointed counsel for Elias, she filed a supplemental motion for a reduction of her sentence under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that her hypertension exacerbated her risk of serious injury or death if she were to contract COVID-19. Elias requested that the warden file a compassionate-release motion on May 7, 2020, which was denied, and Elias appealed that decision on May 27, 2020, satisfying the exhaustion requirements.

Before the district court, Elias claimed that her hypertension "place[d] her in particular danger should she contract COVID-19" and constituted an extraordinary and compelling reason for release. In reviewing this claim, the district court relied on its previous decision assessing a compassionate-release motion by an inmate seeking a sentence modification due to COVID-19. In that case, the district court crafted a two-part test for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020). The district court relied on the same test here.

Elias claims that the district court abused its discretion in finding that there were not extraordinary and compelling reasons for her release. We review the district court's denial of compassionate release for an abuse of discretion. *Jones*, 980 F.3d at 1112. An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)). This analysis examines the entire sentencing record, "including the records from the original sentencing, records on the modification motion, and the final compassionate release decision." *Jones*, 980 F.3d at 1112.

Initially, we note that Elias did not provide any records in her motion to support that she has hypertension. The district court could have denied Elias's motion for compassionate release on this basis. *See, e.g.*, *United States v. Schnabel*, No. 2:17-CR-169, 2020 WL 3566613, at *6 (S.D. Ohio July 1, 2020); *United States v. Dickson*, No. 1:19-CR-251-17, 2020 WL 1904058, at *3 (N.D. Ohio April 17, 2020).

However, even if the district court assumed that Elias had hypertension, the district court did not abuse its discretion in denying the motion. As we have held above, district courts are not bound by § 1B1.13 in defining extraordinary and compelling reasons for release. In this case, the district court did not abuse its discretion in relying on the two-part test it articulated.[1] Here, the district court properly considered the CDC guidance that was in effect at the time, which did not include hypertension. Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions. *See, e.g.*, *Wilson v. United States,* No. 2:11-cr-180, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020) ("When assessing compassionate release motions during the pandemic, the Court examines the [CDC's] list of risk factors for severe COVID-19 complications."). Additionally, the court reviewed a scientific journal which stated that "there is as yet no evidence that hypertension is related to outcomes of COVID-19."

---

[1]We do not hold that district courts evaluating compassionate release motions relating to COVID-19 must apply the same definition of "extraordinary and compelling reasons" that the district court articulated here. We only hold that the district court did not abuse its discretion in adopting the definition used here or in applying that test to the record.

Furthermore, the district court examined the BOP's webpage and noted there were no reported cases at FPC Alderson where Elias was incarcerated.  It was not an abuse of discretion for the district court to conclude that speculation that COVID-19 *could* spread to FPC Alderson was insufficient to justify Elias's release.  *See United States v. Dorsey*, No. 15-20336, 2020 WL 3819123, at *4 (E.D. Mich. July 8, 2020) ("Although many other prisons have experienced high rates of infection among inmates, the 'mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.'" (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020))).

In reviewing a sentence reduction proceeding, we require that the district judge "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Jones*, 980 F.3d at 1113 (quoting *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1964 (2018)).  The district court did so here.

### III

For the foregoing reasons, we **AFFIRM** the decision of the district court.