NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0114n.06

No. 20–1930

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 03, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff – Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| TYRONE PRICE, | ) |
| | ) |
| Defendant – Appellant. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**BEFORE: GIBBONS, WHITE, and THAPAR, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Appellant Tyrone Price appeals the denial of his motion for compassionate release. We affirm.

Between approximately 2011 through August 2015, Price was a member of the Traveling Vice Lords, a subgroup of the national Vice Lords gang. During that time, Price trafficked in controlled substances, including marijuana, Xanax, and ecstasy, at locations around the Detroit metropolitan area. On May 7, 2015, Price met with several other gang members, including co-defendant Antonio Clark. Clark brought an AK-47 to the meeting. After the meeting, the group went to V.T.'s home intending to punish him for stealing drugs from the gang. Clark was a passenger in the car Price drove to V.T.'s, and Price was aware that Clark brought an assault rifle and planned to shoot V.T. When Price and his group pulled up to the curb, V.T., his mother, three of his siblings (two of whom were minors), and a five-year-old relative were in the house and around the outside of the house. After a fight broke out and V.T.'s mother emerged from the house

with a shotgun, Clark opened fire with his AK-47. Clark fired approximately twenty-three times and V.T., his mother, brother, and teenage sister were all shot, although none sustained life-threatening injuries. After the shooting, Price and the other gang members left the scene.

Price was charged with participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count 1), four counts of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) (Counts 3, 5, 6, and 7), and use and carry of a firearm during, and in relation to, a crime of violence in violation of 18 U.S.C. § 924(c) (Count 9). Price pleaded guilty to Counts 3, 5, and 9. The district court determined that the guidelines range for Counts 3 and 5 was forty-one to fifty-one months' imprisonment. Count 9 carried a mandatory minimum term of ten years' imprisonment, consecutive to any other sentence. There were no objections to the calculation of the guidelines range. At the sentencing hearing, Price's attorney advocated for a below-guidelines sentence, and specifically requested that Price be placed in a prison facility where he could be treated for his psychological and medical problems. After considering the relevant 3553(a) factors, taking particular note of Price's history and conduct including firearms, as well as his youth, lack of guidance, and relatively low culpability in comparison to his co-defendants, the district court sentenced Price to concurrent terms of twenty months' imprisonment on Counts 3 and 5, and 120-months' imprisonment on Count 9, to be served consecutively to the sentences on Counts 3 and 5, for a total of 140-months' imprisonment. Price filed a motion to vacate his sentence, which the district court denied.

On July 8, 2020, after his request for early home confinement due to the COVID-19 pandemic was denied, Price filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Price asserted that the requirement that inmates wear protective masks when they leave their cells complicated his pre-existing conditions of pruritus, intertrigo, and allergic

rhinitis. In an attached affidavit, Price also asserted that he was suffering from an ear infection, which was causing headaches and high blood pressure, and that he was on a prescribed antibiotic treatment. Price alleged that the prison facility in which he was being held went from one positive COVID-19 case to forty-five positive cases in just one week because "[s]taff failed to follow the BOP Modification Operation . . . [t]here is no ble[a]ch or other cleaning supplies nor hand sanitizer and staff are not wearing gloves." R. 488, PID 2654. Price also alleged that some staff at the prison were not wearing their masks. After the district court appointed Price counsel, his attorney filed a supplemental brief in support of his application for compassionate release. The supplemental brief alleged that Price suffers from asthma, obesity, hammer toes, lumbar lordosis, allergies, and mental-health disorders, and that according to the Centers for Disease Control and Prevention (CDC), his obesity and asthma put him at an increased risk of severe illness from COVID-19.

In its order denying Price's motion for compassionate release, the court recognized that the BOP has done a poor job of confining the spread of COVID-19 at the facility where Price is housed, that the probability of infection at the prison was high amid a significant outbreak in the prison, and that Price's obesity is a recognized risk factor for complications from COVID-19. The district court nonetheless found that Price had failed to demonstrate that compassionate release or a reduction in his sentence is justified.

The district court noted that the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, requiring a prisoner to prove lack of dangerousness, does not have the force of law pursuant to *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc), and regardless is not a requirement for a prisoner seeking release under 3582(c)(1)(A)(i).

The district court determined that consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily against granting Price a reduction in sentence. The court found that Price's involvement in the Vice Lords gang and his participation in an attack in which multiple persons were shot, as well as his proud promotion of his position as an enforcer in the gang on social media, including posts depicting himself brandishing a pistol and assault rifle, amounted to "extremely serious" criminal conduct. The court also noted that Price's criminal history spanned 15 years, including previous convictions for illegal possession of guns and assault crimes (including other shootings), and that Price had continued to procure, carry, and use weapons illegally, despite the fact that he was barred from doing so by prior felony convictions. The district court concluded that the circumstances suggest that, if released, Price would pose a serious danger to the community.

The district court acknowledged that Price has done well in prison, has undertaken efforts to better himself, and has avoided citations for serious misconduct. Nonetheless, the district court found that Price's conduct in prison does not alter the fact that the court imposed a sentence that was "not greater than necessary to achieve congressional goals," that reducing his sentence to less than half the original term would not promote respect for the law or provide just punishment for defendant's crime and would undermine both specific and general deterrence, "which is of particular concern with a defendant who repeatedly has shown that he has not been deterred from committing violent crimes by the punishments imposed for his previous convictions."

The district court found that Price failed to present adequate evidence that he suffered from asthma and, therefore, that his obesity is the only recognized risk factor for COVID-19. The district court recognized that Price is "justifiably concerned about the health risks posed by his incarceration" and that the probability of infection in the facility where Price is confined is

significant given an ongoing outbreak at the prison. But ultimately, the district court found that "[c]onsideration of the factors in 18 U.S.C. § 3553(a) weighs heavily . . . against granting any reduction in sentence, particularly in conjunction with the defendant's overall young age, decent health, and the presence of only one medical factor somewhat increasing his risk of serious complications."

## II.

Price argues on appeal that the district court abused its discretion by relying on Price's "stale juvenile convictions" in concluding that Price would be a danger to the community, and by failing to consider all of Price's personal characteristics, including his medical conditions, as part of its consideration of the relevant § 3553(a) factors and analysis of whether his condition was sufficiently severe to warrant compassionate release.

## A.

Where, as here, a motion for compassionate release is sought under 18 U.S.C. § 3582(c)(1)(A), the district court must consider whether there are "extraordinary and compelling reasons" and whether those circumstances warrant a reduction in sentence considering the applicable § 3553(a) factors. District courts are required to supply sufficient reasons to enable "meaningful appellate review." *United States v. Jones*, 980 F.3d 1098, 1116 (6th Cir. 2020). We review the district court's denial of compassionate release for an abuse of discretion. *Id.* An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)), reh'g denied (July 31, 2020). "This analysis examines the entire sentencing record, 'including the records from the original sentencing, records on the modification motion, and the

final compassionate release decision.'" *United States v. Elias*, 984 F.3d 516, 520 (quoting *Jones*, 980 F.3d at 1112).

**B.**

Price argues that the district court abused its discretion by relying on stale juvenile convictions to conclude that he would be a danger to the community. We disagree. The district court, in considering whether a sentence reduction would account for "the seriousness of the offense," and the need to "protect the public from further crimes of the defendant," "promote respect for the law," and "afford adequate deterrence to criminal conduct," considered Price's involvement in the violent shooting for which he was sentenced, as well as his involvement in numerous prior offenses involving firearms. 18 U.S.C. § 3553(a). Although Price was a juvenile at the time of his first two offenses in 2006, they are not stale or irrelevant to Price's dangerousness, or to the length of sentence necessary for deterrence. In March 2006, Price was convicted of carrying a concealed handgun. In September 2006, Price was convicted on multiple counts after firing a gun at a person and then pointing it at two others. In November 2007, after Price had turned 18, he was arrested for carrying a concealed weapon, and was placed on probation after pleading guilty. In 2009, Price was again arrested for firearms possession, and was convicted of carrying a concealed weapon, being a felon in possession of a weapon, and another related felony firearm offense. Price was released from prison on July 31, 2012, and his parole was discharged on July 31, 2014. The shooting for which Price is serving his sentence occurred less than one year after Price's parole was discharged. The district court fairly concluded that Price had a long history of gun-related criminal conduct. This would be true even if the two juvenile firearms convictions were ignored; however, the district court did not err in considering the juvenile convictions because they are relevant to Price's pattern of conduct and dangerousness.

Price also argues that the district court abused its discretion in failing to consider all Price's personal characteristics, specifically his hypertension and being African American, in its consideration of the § 3553(a) factors as well as its determination that his circumstance was not "extraordinary and compelling." As to hypertension, there is no mention of this condition in Price's motions. There is an affidavit attached to Price's original pro se motion that states "Price['s] pre-existing conditions related to his health [are] stated in his Presentencing Report and the motion for extraordinary and compelling reasons. He currently has a[n] ear infection causing headaches and high blood pressure." The affidavit also states that Price's ear infection is being treated with antibiotics. This notation appears to indicate a temporary condition, and the district court did not err in failing to consider it as part of its analysis of Price's eligibility for compassionate release, which was not decided until six weeks after the submission of the affidavit, and after the submission of a supplemental brief that did not discuss Price's blood pressure.

Price argues that hypertension is listed in his Presentence Report, and therefore should have been considered regardless of its inclusion in his motion. The Presentence Report Price states as part of the mental-and-emotional-health section that Price has a "history of depression and anxiety (hypertension)," but neither hypertension nor high blood pressure are noted in the section related to Price's physical condition, where other medical conditions are listed. Thus, it was not made clear to the district court whether Price was ever diagnosed with the type of hypertension that would qualify as a possible risk factor for severe illness from COVID-19.

Price also argues that the district court should have considered the fact that he is African American in analyzing his increased risk from COVID-19. But Price did not raise the increased risk of severe illness from COVID-19 based on this circumstance in either of his motions for

compassionate release.  Because the issue was not raised in the district court, the district court did not abuse its discretion in failing to consider it.

Finally, Price argues that the failure to consider all his relevant personal characteristics (referring to his alleged hypertension and his being African American) rendered the district court's consideration of whether his sentence would create unfair disparities unreasonable.  Because the district court did not abuse its discretion in failing to consider any relevant characteristics in its analysis of Price's motion, we need not address this argument.

**III**.

For the foregoing reasons, we AFFIRM.