NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0527n.06

Case No. 21-1477

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 18, 2021

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ROGER JUNIOR SWEET, | ) | |
| | ) | |
| Defendant-Appellee. | ) | O P I N I O N |
| | ) | |

BEFORE:    COLE, KETHLEDGE, and WHITE, Circuit Judges.

COLE, Circuit Judge.  The government appeals the district court's grant of Roger Sweet's motion for compassionate release after he had been fully vaccinated against COVID-19.  At the time of his release, the 73-year-old Sweet had served 168 months of his 262-month federal sentence for four counts of sexual exploitation of children and one count of attempted receipt of child pornography, having received credit for the approximately 12 years he served in state custody for a related charge of criminal sexual conduct and his first wife's murder.  Because Sweet's vaccination status underlies the "extraordinary and compelling reasons" meriting his release and the district court abused its discretion when it failed to properly weigh Section 3553(a)'s factors, we reverse.

I.

Sweet's crimes came to light in January 2007, after a fire consumed his home in Michigan. After the Brownstown Fire Department extinguished the blaze, responders found a camera, computers, and computer hardware with cut cables stacked up in a burned-out hallway. When investigators sought to interview Sweet and his then-wife, Lizzie Mae Collier-Sweet, about the fire, they learned Lizzie Mae had disappeared. When asked about his wife's disappearance, Sweet told law enforcement that Lizzie Mae probably set the fire and "then went out in the woods and killed herself." (PSR, R. 25, PageID 98.) He claimed she did not like the amount of time he spent on the computer and said he was sure she cut the devices' cables, even though he admitted that he alone had access to them.

Lizzie Mae's diary suggested something quite different had happened. Before her disappearance, Lizzie Mae wrote that she was afraid of her husband—so much so that she slept on the couch next to a hammer and a shotgun. Lizzie Mae's best friend told investigators the same, explaining that Lizzie Mae was afraid of her husband and the two were divorcing. She also noted that Sweet had long been sexually assaulting a developmentally disabled teenage girl in his neighborhood. Though 19-years-old at the time, the neighborhood girl told law enforcement that Sweet had sexually abused her for several years.

The arson, coupled with the sexual abuse allegations and Lizzie Mae's disappearance, prompted law enforcement to obtain a search warrant to search what remained of the Sweet home and the contents of the computers.[1] A forensic search of the computers revealed more than half a million images of child pornography, including over 2,500 images of children in bondage.

---

[1] About seven years into Sweet's sentence, authorities found Lizzie Mae's body in a shallow grave about a mile from Sweet's home. The autopsy was indeterminate as to cause of death.

The computers also contained over 1,000 images Sweet had made of his repeated rapes of the neighborhood girl while she was 16- and 17-years old.

In light of Lizzie Mae's disappearance, authorities in nearby Oakland County, Michigan, decided to reexamine the untimely death of Sweet's first wife, Marlene. Marlene died in 1990 from head injuries, which Sweet claimed were the result of an accidental fall. After reviewing Marlene's autopsy, the medical examiner concluded the bruising on her body could not have been caused by an accident and ruled her death a homicide. Marlene and Roger Sweet's son testified that his father abused his mother frequently, and Marlene's brother confirmed the same.

In 2007, local and federal officials charged Sweet with several crimes. Oakland County officials charged him with second-degree murder for Marlene's death. Wayne County charged him with criminal sexual conduct for his many assaults on the neighborhood girl. And federal officials indicted him on four counts of sexual exploitation of children for producing pornographic images of her, as well as one count each of receiving and possessing child pornography.

Pursuant to a plea agreement, Sweet pleaded guilty to the murder of his first wife, criminal sexual conduct, four counts of sexual exploitation of children, and one count of attempted receipt of child pornography. The Oakland County court sentenced him to 15–30 years for the murder of his first wife, and the Wayne County court sentenced him to 10–17 years for criminal sexual conduct. *United States v. Sweet*, No. 07-20369, 2021 WL 1430836, at *1 (E.D. Mich. Apr. 15, 2021). For his federal crimes, the district court imposed concurrent sentences of 262 months for the sexual exploitation charges and 240 months for attempted receipt of child pornography. All the sentences were to be served concurrently.

After serving about 12 years in state custody, Sweet arrived in federal custody in May 2019. In April 2020, he was briefly hospitalized after contracting COVID-19. Sweet, proceeding

pro se, moved for his release under 18 U.S.C. § 3582(c)(1)(A) in December 2020. The district court appointed a public defender to represent Sweet shortly thereafter. Although Sweet received the first dose of the Moderna vaccine in January 2021, he continued to press for his release with the assistance of counsel. In April 2021, the district court granted his motion for compassionate release.

In its order, the district court concluded Sweet's age and chronic kidney disease provided extraordinary and compelling reasons for his release. *Sweet*, 2021 WL 1430836, at *2. Relying on guidance from the Center for Disease Control and Prevention, the district court noted that Sweet, at 73-years-old, was "at increased risk" for "severe illness or death from COVID-19[.]" *Id.* Additionally, the district court observed that the CDC had added "chronic kidney disease" "of any stage" to the list of conditions that create an increased risk of severe illness from COVID. *Id.* (citation omitted). Though it "agree[d] with the government that recovering from COVID-19 and being fully vaccinated decrease[d] [Sweet's] likelihood of severe COVID symptoms," the district court stressed the potential for Sweet's reinfection because of the prison's congregate setting. *Id.* at *3.

Concluding that Sweet's health conditions and advanced age satisfied the statute's "extraordinary and compelling reasons" requirement, the district court then considered whether the Section 3553(a) factors weighed against Sweet's release. *Id.* at *3–4. The court first acknowledged that Sweet's crimes were "abhorrent" and quickly noted that "the nature and the circumstances of [his] underlying offense[s] weigh[ed] heavily against [him]." *Id.* at *3. It ultimately found, however, that Sweet's spotless disciplinary record while incarcerated "demonstrate[d] a respect for the law" and suggested Sweet's age "could reduce the likelihood that he will recidivate." *Id.* (citation omitted). In the court's view, releasing Sweet would not create

unwarranted sentencing disparities because he had already served 64 percent of his 262-month sentence and other courts had released inmates under similar circumstances. *Id.* at *4 (citations omitted). Consequently, the court reduced Sweet's sentence to time served, granted Sweet's motion for compassionate release, and ordered five years of supervised release. *Id.* The government appealed.

## II.

A district court may grant a defendant's motion for compassionate release when: (1) "extraordinary and compelling reasons" warrant release and (2) the applicable § 3553(a) sentencing factors support it. *United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021) (citations omitted); *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (noting that no policy statement applies when a defendant moves for release). This court reviews both determinations for abuse of discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020); *see also United States v. Bass*, 843 F. App'x 733, 734–35 (6th Cir. 2021) (citation omitted) (order). The district court abuses its discretion when it "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021) (citations omitted). Among other things, "misreading" Section 3582's "extraordinary-and-compelling reasons requirement" constitutes "a purely legal mistake." *Ruffin*, 978 F.3d at 1005 (quotations and citation omitted).

The district court abused its discretion twice: first, when it determined Sweet had demonstrated extraordinary and compelling reasons meriting his release, and second, when it reasoned that the Section 3553(a)'s factors weighed in Sweet's favor.

We have recently cast doubt on a defendant's ability to meet Section 3852's "extraordinary and compelling reasons" requirement following their inoculation against COVID-19. *Lemons*,

15 F.4th at 749–50; *see also United States v. Traylor*, 16 F.4th 485, 485 (6th Cir. 2021). At the time of Sweet's release, he had previously contracted (and recovered) from the virus and had been fully vaccinated against COVID-19. As we have acknowledged, "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Lemons*, 15 F.4th at 751 (citation omitted).

It follows that a district court abuses its discretion by granting a sentence reduction under Section 3582(a) when the inmate "largely faces the same risk from COVID-19 as those who are not incarcerated" after being vaccinated. *Id.* (citations omitted). Here, the district court did just that, determining that Sweet's "advanced age and underlying health conditions" justified a sentence reduction because of its concerns about "the potentially severe consequences if Sweet contracted COVID-19 again." *Sweet*, 2021 WL 1430836, at *3. Aside from pointing to prison's congregate setting, though, the district court offered no other reason why Sweet's risk of reinfection would be any greater in confinement than it would be in the outside world. *Id.*

Even assuming that Sweet's age and chronic kidney condition satisfied Section 3582's requirements, the district court abused its discretion by "engag[ing] in a substantively unreasonable balancing" of Section 3553(a)'s factors. *Ruffin*, 978 F.3d at 1005. Section 3553(a) "blankets a vast terrain of sentencing factors[.]" *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020). These include, among other things, the "nature and circumstances" of a defendant's offense, the defendant's "history and characteristics," and the need for their sentence "to reflect the seriousness of the offense[s]" or "provide just punishment." 18 U.S.C. § 3553(a)(1)–(2). Courts may also consider what sentence is needed for the public's protection, "the kinds of sentences available," and how to avoid sentencing disparities among defendants with similar records. 18 U.S.C. § 3553(a)(2)–(4), (6).

Here, the district court "placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Trevino*, 7 F.4th 414, 431 (6th Cir. 2021) (internal quotations and citation omitted). The district court's analysis gave Sweet's flawless disciplinary record outsized import, suggesting that it "demonstrate[d] a respect for the law" and at least lent itself to the inference that Sweet was unlikely to reoffend. *Sweet*, 2021 WL 1430836, at *3. But aside from quickly observing that "the nature and circumstances of the underlying offense weigh heavily against Sweet," *id.*, the district court failed to "directly confront the nature of [Sweet's] individual conduct and hold him responsible for such conduct." *See Bass*, 843 F. App'x at 736 (quoting *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015)). As the government pointedly stressed, Sweet murdered his first wife, recorded the repeated rapes of his developmentally disabled neighbor, and may have played a role in his second wife's disappearance. Although Sweet's prison disciplinary record was clean, this says little about his potential to harm women and children once released.

The district court also abused its discretion by failing to properly consider Sweet's character and history. Had the district court properly considered Sweet's character and history, it would have had to confront the horrific ways in which Sweet abused his wives and neighbor. Although the district court repeatedly stressed Sweet's age would make it less likely for him to reoffend, *see Sweet*, 2021 WL 1430836, at *3, this ignores the fact that Sweet committed many of his offenses later in life. Indeed, he was sentenced for his crimes at age 60. Again, Sweet's long history of violence against women and sexual abuse of children counsels against his release.

Finally, the district court's assessment that releasing Sweet would not create unwarranted sentencing disparities was also flawed. The district court reasoned that Sweet's release was proper because he had already served 64 percent of his 262-month sentence and other courts had released

inmates under similar circumstances. *Sweet*, 2021 WL 1430836, at *4. But in so doing, the district court ignored the clear differences between the facts before it and those present in the other cases. For example, both the district court and Sweet rely on *United States v. Pippin*, No. CR16-0266-JCC, 2020 WL 2602140 (W.D. Wash. May 20, 2020) to support his release. As the district court described, the 50-year-old Pippin was convicted of possessing over 7,000 images of child pornography and was released from confinement in May 2020 with 28 months left on his 84-month sentence. 2020 WL 2602140, at *1.

Here, however, Sweet (1) had approximately 94 months left on his sentence; (2) his child pornography collection contained over half million images; and, most importantly, (3) Sweet produced his own child pornography, which carries a far longer sentence than that associated with mere possession. Sweet's case is similarly distinguishable from the other cases the district court relied upon. These differences bolster our conclusion that the district court improperly weighed Section 3553(a)'s factors.

III.

Because the district court abused its discretion by granting Sweet's compassionate release motion, we reverse.

HELENE N. WHITE, Circuit Judge, concurring in part.  I concur in the judgment because I agree that this case is controlled by *United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021) and *United States v. Traylor*, --- F.4th ---, 2021 WL 5045703 (6th Cir. Nov. 1, 2021).