NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0119n.06

No. 20-1635

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| KWAME AMIN MATHEWS, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**FILED**
Mar 08, 2021
DEBORAH S. HUNT, Clerk

**BEFORE: MOORE, ROGERS, and READLER, Circuit Judges.**

MOORE, J., announced the judgment of the court and delivered an opinion in which ROGERS and READLER, JJ., joined in the result and in Parts I and II.C. READLER, J. (pg. 13), delivered a separate concurring opinion.

**KAREN NELSON MOORE, Circuit Judge**. By the end of 2020, one in every five persons incarcerated in the United States had tested positive for COVID-19.[1] At least 275,000 imprisoned persons across the country have been infected; more than 1,700 have died.[2] A court's

---

[1] This widely cited statistic is reported by The Marshall Project and The Associated Press. *See* Beth Schwartzapfel, Katie Park & Andrew Demillo, *1 in 5 Prisoners in the U.S. Has Had COVID-19*, THE MARSHALL PROJECT (Dec. 18, 2020, 6:00 AM), https://www.themarshallproject.org/2020/12/18/1-in-5-prisoners-in-the-u-s-has-had-covid-19. This number is derived from data "collected on a weekly basis by Marshall Project and AP reporters who contact each prison agency directly and verify published figures with officials." *The Marshall Project: COVID Cases in Prisons*, DATA.WORLD, https://data.world/associatedpress/marshall-project-covid-cases-in-prisons (last visited Jan. 26, 2021). For comparison, at the same time, one in every twenty persons in the United States tested positive for COVID-19. *See* Schwartzapfel, Park & Demillo, *supra*.

[2] This number accounts for COVID-19 cases in state and federal prisons. *See* Schwartzapfel, Park & Demillo, *supra*, note 1. According to the U.S. Bureau of Prisons ("BOP") and the Department of Justice ("DOJ"), in the federal prison system, 1,804 incarcerated persons have COVID-19, 45,542 have "recovered" from COVID-19, and 222 have died from the virus. *See COVID-19 Coronavirus: COVID-19 Cases Full breakdown and additional details*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited February 22, 2021); *BOP and COVID-19 at a Glance*, DEP'T OF JUST. OFF. OF THE INSPECTOR GEN.,

refusal to reduce an incarcerated person's sentence could result in death.[3]  We therefore consider

with the utmost seriousness whether Kwame Amin Mathews—who is incarcerated the Federal

---

https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_1/ (last visited Feb. 22, 2021) (citing BOP and privately collected data).

[3]In what can only be described as dicta about dicta, Judge Readler diminishes COVID-19's rampage in our federal prisons and assails The Marshall Project's integrity.  We should not treat lightly the experience of persons who are incarcerated in prisons that are plagued with a deadly virus; nor should we demean those who advocate for imprisoned persons.  Many compassionate-release motions implicate complex issues of law and policy that merit our attention.  Contemplation of these issues aids our future reviews of compassionate-release motions.  Consider, for example, *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020).  No doubt, three-quarters of *Ruffin* was unnecessary to its holding.  Yet *Ruffin*'s thoughtful rumination on the history of compassionate release and sophisticated untangling of administrative-law issues informed our later case law.  *See United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020) (drawing on *Ruffin*); *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021) (referring extensively to *Jones* and *Ruffin*); *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021) (citing *Elias*, *Jones*, and *Ruffin*); *United States v. Sherwood*, 986 F. 3d 951, 953–54 (6th Cir. 2021) (relying on *Hampton*, *Elias*, *Jones*, and *Ruffin*).

Providing context when context matters is not misplaced.  *See, e.g.*, *Cretacci v. Call*, — F. 3d —, No. 20-5669, 2021 WL 610166, at *8 (6th Cir. Feb. 17, 2021) (Readler, J., concurring) ("I am not blind to the challenges inmates face in pursuing legal remedies. . . . As a policy matter, one can see why a litigant who cannot personally ensure a timely filing with the court should benefit from a filing rule that accounts for her unique circumstance."); *Davis v. Helbling* (*In re Davis*), 960 F.3d 346, 358 (6th Cir. 2020) (Readler, J., dissenting) ("Start with the historical case law backdrop."); *Ozburn-Hessey Logistics, LLC v. Nat'l Labor Relations Bd.*, 803 F. App'x 876, 889 (6th Cir. 2020) (Readler, J., dissenting in part) (explaining the "historic" nature of an agency's penalties).  Illustrating the milieu of Mathews's compassionate-release motion with prison-provided statistics about COVID-19 is just as helpful as painting the backdrop of a drug dealer's sentence using Centers for Disease Control information about heroin and National Institutes of Health data about the opioid crisis.  *Cf. United States v. Brown*, 828 F. App'x 256, 262–63 (6th Cir. 2020) (Readler, J., dissenting); *see also United States v. Owen*, 940 F.3d 308, 309 (6th Cir. 2019) (Readler, J.) (using Department of Health and Human Services data to clarify that manufacturing methamphetamine is dangerous).  No reader would confuse the first three sentences of this opinion's introduction with today's holding, just as no reader would conflate an opinion's policy reasons—which are not necessary to the outcome—*see, e.g.*, *Joseph Forrester Trucking v. Dir., Office of Workers' Comp. Programs*, 987 F. 3d 581, No. 20-3329, 2021 WL 386555, at *7 (6th Cir. Feb. 4, 2021) (Readler, J.); *Flowers v. WestRock Servs., Inc.*, 979 F.3d 1127, 1134–35 (6th Cir. 2020) (Readler, J.), with any legal standard.

Yes, this introduction cites two statistics that were not in the record of Mathews's case.  Luckily, The Marshall Project and The Associated Press's reporting is of a higher pedigree than the extra-record sources that some embrace.  *Cf. Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 345 (6th Cir. 2020) (Readler, J.) (quoting a blog post titled *When and how baseball became America's Pastime* for the statement that "[b]aseball may forever be considered 'America's pastime'"); *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 424 (6th Cir. 2020) (Readler, J., concurring in part and dissenting in part) (paraphrasing a Grateful Dead song).  Here, these sources did not pull their numbers from an agenda-stuffed hat; our prisons supplied these publicly available data.  *See supra* note 1.  Simply put:  these COVID-19 statistics "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and ought "not [be] subject to reasonable dispute[.]"  FED. R. EVID. 201(b)(2).  Concerned readers need not fret that these prison-provided numbers have exaggerated, somehow, the risk of an incarcerated person's dying of COVID-19.  The BOP and the DOJ—government agencies tasked with auditing federal prisons—have corroborated that thousands of persons incarcerated in federal prisons have contracted and hundreds have died from the virus.  *See supra* notes 1 & 2.

Correctional Institution, Terre Haute in Indiana and suffers from multiple sclerosis—deserves compassionate release. No doubt, Mathews raises legitimate concerns about his health in his 18 U.S.C. § 3582(c)(1)(A) motion: at least 456 persons incarcerated at FCI Terre Haute have contracted COVID-19, four of whom died.[4] But § 3582(c)(1)(A) allows district courts that satisfactorily weigh the sentencing factors listed under 18 U.S.C. § 3553(a) to deny compassionate release, even if "extraordinary and compelling" circumstances justify a sentence reduction. Because the district court adequately explained its § 3553(a) analysis, we **AFFIRM**.

## I. BACKGROUND

Six years ago, Kwame Amin Mathews pleaded guilty to aiding and abetting the distribution of cocaine base. R. 140 (Judgment at 1) (Page ID #886); R. 148 (1/29/15 Sent'g Tr. at 2–3) (Page ID #934–35); R. 149 (3/5/15 Sent'g Tr. at 2–3) (Page ID #947–48). The district judge sentenced Mathews to 151 months of imprisonment. R. 149 (3/5/15 Sent'g Tr. at 2–3) (Page ID #947–48). Mathews is incarcerated at the Federal Correctional Institution, Terre Haute in Indiana. R. 321 (5/5/20 CR Mot. at 2) (Page ID #2115).

On May 5, 2020, Mathews filed a "compassionate release" motion in the district court pursuant to 18 U.S.C. § 3582(c)(1)(A) to seek a sentence reduction.[5] *Id.* at 1 (Page ID #2114).

---

[4]On February 22, the BOP reported in a table titled "COVID-19 Cases"—which is updated daily—that there are eight "inmates positive[,]" four "inmate deaths[,]" and 444 "inmates recovered" at FCI Terre Haute. *See COVID-19*, *supra*, note 1. The BOP explains that "[t]he positive test numbers are based on the most recently available **confirmed lab results** involving **open cases** from across the agency . . . ." *Id.* Thus, the number of "inmates positive" represent open COVID-19 cases in federal prisons, and there is no overlap between "inmates positive" and "inmates recovered."

[5]This is Mathews's second motion for compassionate release. Mathews submitted a compassionate-release request to the BOP on March 31, 2020, *see* R. 321 (5/5/20 CR Mot. at 2) (Page ID #2115), and filed his first compassionate-release motion with the district court on April 6, 2020, R. 314 (4/6/20 CR Mot. at 9) (Page ID #2068). The district court dismissed Mathews's first motion without prejudice because Mathews had failed to exhaust the BOP's administrative remedies or to wait thirty days after receipt of his request before moving for compassionate release, as required by 18 U.S.C. § 3582(c)(1)(A). R. 320 (4/15/20 Order at 3, 5) (Page ID #2111, 2113); *see also*

3

Mathews asserted that his multiple sclerosis and the emergence of COVID-19 at FCI Terre Haute warranted an early release.[6] According to Mathews, the Bureau of Prisons ("BOP") considers him to be a "Level 3 medical prisoner" due to his "chronic medical conditions[.]" *Id.* at 3 (Page ID #2116). Because his multiple sclerosis medication "suppress[es] his immune system[,]" according to Mathews, he is "squarely" at risk for contracting COVID-19. *Id.* at 4 (Page ID #2117). Mathews pointed out that COVID-19 has broken out at FCI Terre Haute as well as the prison's "dense population . . . , close proximity of inmates, and [] inability to provide prisoners [with] personal protection equipment[.]" *Id.* at 4–5 (Page ID #2117–18). Mathews asked the district court to consider his elderly parents' "needs"; his septuagenarian mother is "recovering" from COVID-19 and his octogenarian father is "unable to care for himself." *Id.* at 12 (Page ID #2125). Mathews also asserted that he "has not incurred any serious offenses" in prison and "has availed himself of prison programs and classes to prepare himself for release." *Id.*

The same district judge that sentenced Mathews also considered Mathews's compassionate-release motion. *Compare* R. 149 (3/5/15 Sent'g Tr. at 1) (Page ID #946), *with* R. 327 (6/29/20 Order at 1) (Page ID #2192). The district court found that the sentencing factors listed in 18 U.S.C. § 3553(a) counseled against release. R. 327 (6/29/20 Order at 3–4) (Page ID #2194–95). The district court then considered whether Mathews had demonstrated an

---

*United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). Because the BOP failed to resolve Mathews's compassionate release request within thirty days, Mathews may file his second compassionate-release motion. *See Alam*, 960 F.3d at 833. The Government agrees that Mathews has satisfied § 3582(c)(1)(A)'s exhaustion requirements. *See* Appellee's Br. at 5.

[6]Mathews asserted in his compassionate-release motion that he "suffers from multiple sclerosis, peripheral neuropathy, chorloretinal scarring (with blurred vision), and [a] history of closed head injuries." R. 321 (5/5/20 CR Mot. at 3) (Page ID #2117). This opinion focuses on Mathews's multiple sclerosis because it is his most serious medical condition and is the only ailment that he refers to in his brief. *See* Appellant's Br. at 4, 8 (referring to multiple sclerosis but not Mathews's other medical conditions).

"extraordinary and compelling" reason for a sentence reduction. *Id.* at 4–8 (Page ID #2195–99). The district court cabined its "extraordinary and compelling" analysis to U.S. Sentencing Guideline § 1B1.13 and the guideline's application notes. The court found that the "possibility of contracting COVID-19" and multiple sclerosis do not fit into the four extraordinary and compelling circumstances set forth in the sentencing guideline's Application Note 1; that Mathews did not meet the age requirements of § 1B1.13(1)(B); and that Mathews "would be a danger to others and the community if released" per § 1B1.13(2). *Id.* at 6–7 (Page ID #2197–98); *see also* U.S. Sent'g Guidelines Manual § 1B1.13(1), (2) & cmt. n.1 (U.S. Sent'g Comm'n 2018). The district court denied Mathews's compassionate-release motion with prejudice. *Id.* at 1 (Page ID #2192). Mathews appealed.

## II. DISCUSSION

### A.

We review for an abuse of discretion a district court's denial of a compassionate-release motion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020) (quoting *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010)). To "strike the proper balance under the abuse-of-discretion standard," we must "both accord due deference to district judges and correct their factual and legal errors." *Id.* at 1112. "[W]e require that the district judge 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (quoting *Jones*, 980 F.3d at 1113 (quoting *Chavez-Meza v.*

*United States*, ⸺ U.S. ⸺, 138 S. Ct. 1959, 1964 (2018))). "[A] district court does not abuse its discretion in denying a sentence reduction as long as 'the record as a whole satisfies us that [it] "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority."'" *Ruffin*, 978 F.3d at 1008 (quoting *Chavez-Meza*, 138 S. Ct. at 1967 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007))).

Before granting a compassionate-release motion, a district court must engage in a three-step inquiry pursuant to § 3582(c)(1)(A)'s "three substantive requirements for granting relief." *Id.* at 1004. First, the court must "find" whether "extraordinary and compelling reasons warrant" a sentence reduction. *Jones*, 980 F.3d at 1107–08 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)) (alteration and footnote omitted). Second, a court must "find" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 1108 (quoting 18 U.S.C. § 3582(c)(1)(A)) (alteration and emphasis omitted). Third, the court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id.* at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)) (alterations in original).

The Sentencing Commission's policy statement for 18 U.S.C. § 3582(c)(1)(A) is U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. SENT'G COMM'N 2018). We first contemplated in *Ruffin* whether district courts may look beyond § 1B1.13 when assessing whether an extraordinary and compelling reason is present. *Ruffin*, 978 F.3d at 1007–08. In *United States v. Jones*, we "join[ed] the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." 980 F.3d at 1109 (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d

Cir. 2020)); *see also Elias*, 984 F.3d at 519 (reaffirming *Jones*). The Seventh and Fourth Circuits have since come out the same way as *Jones*, *see United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020), and the Fifth Circuit has suggested that it does not consider § 1B1.13's commentary to be "dispositive," *United States v. Thompson*, 984 F.3d 431 (5th Cir. 2021). Now, a district court that "impermissibly denie[s] relief based solely on [an imprisoned person's] failure to demonstrate a circumstance set forth in § 1B1.13" abuses its discretion. *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021).

**B.**

The COVID-19 pandemic has prompted us rapidly to develop our compassionate-release case law, and the district court did not have the benefit of our latest precedent. Our recent case law has rendered anachronous two aspects of the district court's finding that Mathews has failed to present extraordinary and compelling reasons for compassionate release. First, the district court "impermissibly" circumscribed its extraordinary-and-compelling analysis to § 1B1.13. *See id.* Had the district court denied Mathews relief solely because Mathews failed to assert a circumstance listed in § 1B1.13, we would have reversed on this basis alone. *See United States v. McIver*, No. 20-5859, 2021 WL 267910, at *2 (6th Cir. Jan. 20, 2021) (order) ("Because the district court relied on [] § 1B1.13 here, we conclude that a remand is warranted so that the district court can exercise its 'full discretion' to determine in the first instance whether McIver demonstrated extraordinary and compelling reasons for compassionate release without reference to [] § 1B1.13) (quoting *Jones*, 980 F.3d at 1111); *United States v. Ammons*, No. 20-5799, at *2 (6th Cir. Dec. 9, 2020) (order) (concluding that "remand is warranted" because district court "indicated that it did

not have the authority to find extraordinary and compelling reasons other than those listed" in § 1B1.13's application notes); *see also Hampton*, 985 F.3d at 533 (describing *Ammons*).

Second, the district court was overly dismissive of Mathews's health concerns. Mathews's compassionate-release motion explained and provided evidence to the district court that COVID-19 had broken out *at his prison*. R. 321 (5/5/20 CR Mot. at 4–5) (Page ID #2117–18). Yet the district court depicted Mathews's motion as arguing that "the spread of COVID-19 *throughout the nation* qualifies as a compelling and extraordinary circumstance" and did not address the situation at FCI Terre Haute. R. 327 (6/29/20 Order at 6) (Page ID #2197) (emphasis added). Equally troubling is the district court's treatment of Mathews's multiple sclerosis. The court found without any substantiation that Mathews failed to assert that he has "a serious physical or medical condition or a serious functional or cognitive impairment that prevents him from providing self-care"[7] and suggested that Mathews does not have "an actual medical condition." *Id.*

There is no known cure for multiple sclerosis, and Mathews's condition is unlikely to improve. *See United States v. Curtis*, No. 03-533, 2020 WL 1935543, at *2 (D.D.C. Apr. 22, 2020) (citing Mayo Clinic data). As we recently observed: "[M]ultiple sclerosis certainly qualifies as an 'obvious' serious medical need. Notified that someone was suffering from multiple sclerosis, an objective layman would deem the condition serious. Among other things, the condition can cause serious and permanent nerve damage that can lead to permanent disabilities." *Lumbard v. Lillywhite*, 815 F. App'x 826, 832 (6th Cir. 2020) (Readler, J.) (citing Loren A. Rolek, *Multiple*

---

[7]The requirement of diminished ability to provide self-care is found in U.S.S.G. § 1B1.13 cmt. n.1(A)(ii), which we have held in *Jones*, *Elias*, and *Hampton* to be inapplicable to compassionate-release motions filed by imprisoned persons. *See supra* § IIA.

*Sclerosis: It's Not the Disease You Thought It Was*, 1 CLINICAL MEDICINE AND RESEARCH 57, 58 (2003)). The BOP's "medical criteria for compassionate release," moreover, include "certain forms of multiple sclerosis" and refer to the disease as a "chronic or serious medical condition[] related to the aging process." *Compassionate Release Criteria for Elderly Inmates with Medical Conditions*, FEDERAL BUREAU OF PRISONS CLINICAL GUIDANCE JUNE 2019, https://www.bop.gov/resources/pdfs/2019_compassionate_release_cpg.pdf. Mathews has at least expressed "legitimate fears about the health risks created by the COVID-19 pandemic[] [a]nd[,] like many inmates, he has ample reason to fear that a prison exacerbates those risks." *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). The extent of the COVID-19 outbreak at FCI Terre Haute may have been less certain at the time of the district court's order, but readily available BOP data indicate that hundreds of persons at FCI Terre Haute, and across the federal prison system, have contracted the virus. *See supra* note 4.

The Government argues that Mathews's multiple sclerosis and medication do not expose him to COVID-19 and correctly points out that the Centers for Disease Control and Prevention ("CDC") has not listed multiple sclerosis as a risk factor for COVID-19. *See* Appellee's Br. at 11–12. But what we know about the virus today is not what we knew yesterday; that much is obvious from the CDC's having repeatedly updated its guidance for which underlying medical conditions increase the risk of severe illness in persons exposed to COVID-19.[8] The CDC's own website states that its list of risk factors "is not exhaustive" and warns that "[w]e are learning more about COVID-19 every day." *People with Certain Medical Conditions*, CTRS. FOR DISEASE

---

[8]*CDC updates, expands list of people at risk of severe COVID-19 illness*, CTRS. FOR DISEASE CONTROL AND PREVENTION (Jun. 25, 2020), https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19 html.

CONTROL AND PREVENTION (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

District courts that look beyond the sentencing guidelines have found that incarcerated persons with multiple sclerosis may be especially vulnerable in this pandemic. *See, e.g.*, *United States v. Gutman*, 2020 WL 2467435, at *2 (D. Md. May 13, 2020) (granting compassionate release in part because "Gutman's multiple sclerosis condition renders him especially susceptible to COVID-19 because he must ingest an immunosuppressant, methylprednisolone, to treat the illness"). Indeed, even district courts that refer exclusively to U.S.S.G. § 1B1.13 have found that multiple sclerosis is an "incurable medical condition thus renders [an incarcerated person] unable to 'provide self-care within the environment of a correctional facility' and satisfies the requirements of the policy statement." *Curtis*, 2020 WL 1935543, at *3 (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)).

In short, circumspection is warranted in these times, given how our understanding of COVID-19 continuously evolves. District courts should carefully consider outstanding questions of fact about incarcerated persons' medical conditions and their available treatment. *Cf. United States v. Milner*, 461 F. Supp. 3d 1328, 1336 (M.D. Ga. 2020) (finding that "a hearing to determine the facts" of an incarcerated person's multiple sclerosis and their available treatment "is necessary").

## C.

We may, however, affirm a district court's denial of a compassionate-release motion based on that court's weighing of the § 3553(a) factors. *See Ruffin*, 978 F.3d at 1006. Here, the district

court found that "[a] consideration of the §[]3553 factors indicates that Defendant is not entitled to a sentence reduction." R. 327 (6/29/20 Order at 4) (Page ID #2195).

"[A] district court might abuse its discretion if it engaged in a substantively unreasonable balancing of the § 3553(a) factors." *Ruffin*, 978 F.3d at 1005. "District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114 (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007)). "[W]e consider the entire record," *Ruffin*, 978 F.3d at 1008 (citing *Chavez-Meza*, 138 S. Ct. at 1966–67), "including the records from the original sentencing, records on the modification motion, and the final compassionate release decision[,]" *Jones*, 980 F.3d at 1112; *see also Elias*, 984 F.3d at 520.

The whole record denotes that the district court satisfied its "obligation to provide reasons[.]" *Jones*, 980 F.3d at 1112 (quoting *Chavez-Meza*, 138 S. Ct. at 1963). In its order denying compassionate release, the district court reasoned that "[d]rug-related offenses are serious and [Mathews] has only served 40% of his 151-month sentence." R. 327 (6/29/20 Order at 3) (Page ID #2194). The district court took issue with Mathews's "criminal history of multiple and regular criminal offenses" and highlighted that Mathews had previously been convicted in 2007 for "delivery or manufacture of cocaine." *Id.* at 3–4 (Page ID #2194–95). The district court's statements were pertinent to the "nature and circumstances of [Mathews's] offense[,]" the "history and characteristics of the defendant[,]" and "the seriousness of the offense." 18 U.S.C. § 3553(a)(1), (a)(2)(A); *cf. Ruffin*, 978 F.3d at 1008 (noting that the district court denied compassionate release in part because Ruffin "ha[d] yet to serve even half of his 25-year sentence").

At Mathews's initial sentencing hearing, the district judge found that Mathews's previous "three felony convictions" and "four misdemeanor convictions" constituted "significant criminal history" (relevant to § 3553(a)(1), (a)(2)(B)); referred to Mathews's "limited work history" (relevant to § 3553(a)(1)); and found that Mathews "ha[d] not completed the education that would necessarily bring him to the skills to survive economically without trafficking in illegal substances" (relevant to § 3553(a)(1)). R. 149 (3/5/15 Sent'g Hr'g at 7–8) (Page ID #952–53). To the district court, that Mathews was a "career offender" and "the significance of [Mathews's] offense" were the "overriding factor[s]" in his sentencing decision (relevant to § 3553(a)(1), (a)(2)(A)). *Id.* at 8 (Page ID #953). Notably, the district court sentenced Mathews to the shortest sentence within the advisory guidelines range. *Id.* at 4, 8 (Page ID #949, 953); *cf. Ruffin*, 978 F.3d at 1008 ("[T]he court had already varied downward by five years from Ruffin's guidelines range when imposing that lengthy sentence."). That "the district judge went through every relevant § 3553(a) factor at the sentencing hearing[,]" *Jones*, 980 F.3d at 1115, and was the same judge who originally sentenced Mathews, *cf. id.* at 1114 & n.25, buttress our conclusion.

In sum, we conclude that the district judge did not abuse his discretion in denying compassionate release based on the § 3553(a) factors as explained by the district judge. We **AFFIRM**.

**CHAD A. READLER, Circuit Judge, concurring.** Like Judge Rogers, I also concur in the result, and join Parts I and II.C of the lead opinion. As explained in Part II.C, the district court properly concluded that Kwame Mathews failed to satisfy the factors set forth in 18 U.S.C. § 3553(a), thereby making him ineligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

In reaching that conclusion, however, the lead opinion covers ground that is neither necessary to the outcome nor joined by another member of the panel, making it dicta, and seemingly misplaced dicta at that. One example is the opinion's introductory paragraph, which frames the appeal by invoking prison-related data collected by the Marshall Project. As neither that data nor the means for collecting it are part of the record in this case, and thus unmeasured by federal evidentiary standards, the data's value is difficult to assess. Nor, it perhaps goes without saying, is that entity a government agency tasked with auditing federal prisons. Rather, the Marshall Project describes its mission as "seek[ing] to create and sustain a sense of national urgency about the U.S. criminal justice system." *About Us*, Marshall Project, https://www.themarshallproject.org/about?via=navright (last visited Mar. 4, 2021). As commendable as that mission may be, without prior admission and examination by the district court, I would not accept the Project's agenda-backed reporting as informing how we should apply the federal criminal statutes at issue. And I most certainly would not take the Project's narrative as a basis to conclude that our "refusal to reduce an incarcerated person's sentence could result in death." Lead Op. at 1–2. That statement, of course, should not be confused with today's holding, let alone a standard district courts are to apply in weighing requests for compassionate release.