NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0505n.06

Case No. 24-4095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 29, 2025

KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff - Appellee, )
)
v. )
)
KOREY MOODY, )
)
    Defendant - Appellant. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

---

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Defendant-Appellant Korey Moody appeals the denial of his motion for compassionate release pursuant to 18 U.S.C. § 3742(a).

The district court sentenced Moody to a term of twelve years' imprisonment in 2022 for his involvement in a scheme to possess illegal substances, including cocaine and fentanyl, with the intent to distribute. In 2024, Moody requested that the district court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his kidney disease, which had progressed to end-stage kidney failure. The district court denied Moody's motion, and Moody now argues on appeal that the district court abused its discretion in doing so.

Although Moody's medical condition presents an extraordinary and compelling circumstance in favor of compassionate release, the district court did not abuse its discretion in finding that the 18 U.S.C. § 3553(a) sentencing factors, which the court must consider when weighing a motion for compassionate release, ultimately required the denial of Moody's motion.

Accordingly, we affirm the district court's denial of compassionate release.

**I.**

In 2020, Korey Moody pled guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II). In 2021, in a separate case, Moody also plead guilty to one count of conspiracy to possess with intent to distribute cocaine, cocaine base (crack), heroin, fentanyl, fentanyl analogue, and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), (b)(1)(B)(ii)(II), (b)(1)(B)(iii), (b)(1)(B)(vi), (b)(1)(B)(viii), and 846.

The district court sentenced Moody in both cases at a single hearing on February 25, 2022. During that hearing, defense counsel requested a term of imprisonment at the low end of the applicable Sentencing Guidelines range, noting that Moody suffered from kidney failure and would not be eligible for a transplant until after he completed his federal sentence.[1] Moody originally received a diagnosis of kidney disease in 2010 and, as a result, receives dialysis three times a week. The government requested a term of imprisonment at the high end of the Guideline range, noting Moody's "significant criminal history" and his role as "the leader in a major drug conspiracy" that included distribution of fentanyl and fentanyl analogues. DE 51, Tr. Sentencing Proceedings, Page ID 362, 363. The district court ultimately sentenced Moody at the middle of his Guideline range, with a term of 144 months' imprisonment followed by three years of supervised release.[2]

On September 20, 2024, Moody filed a Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), requesting compassionate release. Moody argued that it had become

---

[1] The district court determined at the sentencing hearing that, based on Moody's offense level of 28 and criminal history Category V, he faced a range of 130 to 162 months' imprisonment.

[2] The parties do not dispute that because of his sentencing, Moody was removed from the Cleveland Clinic's transplant list.

increasingly difficult for him to receive dialysis since entering the Bureau of Prisons' ("BOP") custody and that the "only chance" for his long-term survival was a kidney transplant, which he could not receive while imprisoned. DE 54, Motion to Reduce Sentence, Page ID 388. In support of his motion, Moody submitted an opinion from Dr. Jeffrey Keller, a medical doctor experienced in contracting with prisons to provide care, stating that Moody had developed a "brachial artery aneurysm" over time, meaning "it is getting more difficult" for Moody to receive dialysis. *Id.* at 393. Dr. Keller also stated that Moody was a good candidate for a transplant given his relative youth, and the transplant would "cure him of kidney failure." *Id.* at 394. The government opposed Moody's motion, arguing that while Moody's kidney disease provided extraordinary and compelling circumstances, the § 3553(a) factors ultimately weighed against his compassionate release.

The district court denied Moody's motion on December 10, 2024. The court noted Moody's long criminal history of drug-related offenses, unencumbered by his kidney disease, and found there was no reason to believe that Moody would not be inclined to resume criminal activity if released early. It further found that Moody demonstrated little regard for his safety, despite his illness, or for the safety of his community. The court determined that although Moody could not be on the transplant list while incarcerated, he was nonetheless receiving the medical care he needed in prison. Lastly, the court noted that Moody had served less than a quarter of his twelve-year sentence, which significantly undermined the gravity of his offense and prevented his necessary rehabilitation before release. In sum, the court recognized that while Moody's medical condition undisputedly qualified as an extraordinary and compelling circumstance, the balance of the § 3553(a) factors nonetheless weighed against him.

Moody's timely appeal followed.

**II.**

Our circuit reviews a district court's denial of compassionate release under an abuse of discretion standard. *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) (quoting *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020)). A district court may also abuse its discretion if "its denial was based on a purely legal mistake" or if it engaged in a "substantively unreasonable balancing of the § 3553(a) factors." *See United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (citation modified). While our abuse of discretion standard is deferential, it does not preclude us from correcting a district court's legal or factual error. *Jones*, 980 F.3d at 1112. Ultimately, however, a district court's discretion in granting or denying compassionate release is "substantial." *Ruffin*, 978 F.3d at 1005.

**III.**

In denying Moody's motion for compassionate release, the district court determined that while his end-stage kidney disease presented an extraordinary and compelling circumstance for early release, the § 3553(a) factors nonetheless required the denial of his § 3582(c)(1)(A) motion.

When deciding whether to grant or deny a motion for compassionate release under § 3582(c)(1)(A), district courts conduct a three-step examination, considering: (1) whether extraordinary and compelling circumstances exist; (2) any applicable policy statements by the Sentencing Commission; and (3) a balancing of the § 3553(a) sentencing factors. *See United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021); *see also* 18 U.S.C. § 3582(c)(1)(A). Our court can affirm the district court's denial of compassionate release based on *any* of these criteria, as the district court does not need to address the other factors if it finds one is lacking. *See United States*

*v. Owens*, 996 F.3d 755, 759 (6th Cir. 2021). To satisfy our review on appeal, the district court must "supply specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its compassionate release decision." *Jones*, 980 F.3d at 1112 (citation modified).

Moody's appeal rises and falls on its assertion that the district court improperly considered the § 3553(a) factors when it denied his motion for compassionate release such that it abused its discretion.[3] The factors considered under § 3553(a) are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and sentencing range established"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3553(a). The district court "is best situated to balance the § 3553(a) factors." *Jones*, 980 F.3d at 1114 (citation modified); *see also United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). When reviewing the district court's decision to deny Moody's compassionate release on § 3553(a) grounds, we must examine the whole record, including records from Moody's original sentence, Moody's compassionate release motion, and the court's final decision on compassionate release. *See Jones*, 980 F.3d at 1112; *Elias*, 984 F.3d at 520. Moody makes several arguments on

---

[3] The parties do not dispute that Moody's end-stage kidney disease presents an extraordinary and compelling circumstance. Indeed, the applicable policy statements confirm that "end-stage organ disease" is a qualifying medical condition giving rise to extraordinary and compelling circumstances. U.S.S.G. § 1B1.13(b)(1)(A). And we previously recognized that end-stage kidney failure, specifically, is an extraordinary and compelling circumstance counseling in favor of compassionate release. *See, e.g.*, *United States v. Jones*, No. 21-1232, 2021 WL 5918305, at *2 (6th Cir. Sept. 23, 2021). Thus, the district court properly determined that Moody's medical condition confirmed the existence of extraordinary and compelling circumstances in his case.

appeal alleging the various ways in which the district court abused its discretion when weighing the § 3553(a) factors; none of his arguments persuade us to reverse the district court.

First, Moody argues that the district court abused its discretion because it failed to consider his conduct during his pretrial release or post-sentencing incarceration when determining whether he presented a danger to the community.[4] However, the district court did indeed consider Moody's pretrial and post-sentencing conduct when making its determination. In its opinion denying Moody's motion, the district court explicitly confirmed that it had considered the record, Moody's arguments (which discussed the exact conduct he argues the district court must consider), and the § 3553(a) factors after concluding that Moody had not demonstrated he no longer posed a danger to the community. In *United States v. Richardson*, the defendant argued similarly to Moody here, that the district court failed to consider Richardson's post-sentencing conduct. 960 F.3d 761, 765 (6th Cir. 2020). We found in *Richardson* that, because the district court confirmed it had considered Richardson's motion, the § 3553(a) factors, and his objections before explaining how Richardson's history and characteristics weighed against reducing his sentence, there was "ample proof that the district court considered Richardson's post-sentencing conduct when reading its decision." *Id.* Here, the district court provided the same "ample proof" it considered Moody's pretrial and post-sentencing conduct because it confirmed that it had reviewed the § 3553(a) factors, Moody's motion, and the record before issuing its denial.

Next, Moody argues that the district court's failure to consider the impact his health had on the § 3553(a) analysis constituted an abuse of discretion. The § 3553(a) factors do in fact

---

[4] Moody specifically argued that his two-year period of pretrial conduct proved he is no longer a danger to the community because he complied with all conditions of his supervised release during that time and even traveled outside of Ohio to visit his father in California without incident. Moody further argued that his circumstances post-sentencing, mainly the deterioration of his health, also proved he no longer posed a danger to the community.

contemplate a defendant's health, as they instruct district courts to examine the need for the sentence imposed "to provide the defendant with needed educational or vocational training, *medical care*, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(D) (emphasis added). Once again, however, it appears that the district court *did* consider Moody's health in light of the § 3553(a) factors. Specifically, the court found that although Moody "may not be able to be on the transplant list, while incarcerated he is receiving the medical care he needs on a routine basis, and has access to dialysis and the necessary surgeries to continue creating new ports for treatment." DE 61, Mem. and Order, Page ID 456. This finding shows that the district court examined Moody's health considering the § 3553(a) factors because it evaluated the need for Moody's sentence in light of his ability to receive medical care while serving his prison sentence. *See* 18 U.S.C. § 3553(a)(2)(D).

Finally, Moody argues that the district court abused its discretion "when it found without any basis that the BOP can provide Mr. Moody with adequate medical care." CA6 R. 7, Appellant Br., at 19. In its decision, the district court noted that "[Moody] is receiving the medical care he needs on a routine basis[.]" DE 61, Mem. and Order, Page ID 456. Moody describes this finding as "a clearly erroneous assessment of the evidence." CA6 R. 7, Appellant Br., at 20 (quoting *Jones*, 980 F.3d at 1112). However, the district court's finding was not clearly erroneous. According to Dr. Keller's statement, upon which Moody's argument heavily relies, Moody has been receiving dialysis while incarcerated and has also received surgery when necessary to continue receiving that dialysis. Although Dr. Keller describes a kidney transplant as the "best medical treatment that [Moody] could receive," (DE 54-4, Keller Statement, Page ID 408), he does not state that Moody's current dialysis treatment is not working as it should or that it is impossible for him to receive it. While Moody's medical care in prison may not be the best treatment he could

possibly receive, the district court's decision that his care was adequate given the circumstances was not clearly erroneous such that it constituted an abuse of discretion.

Nor is this finding one "without any support," as Moody argues. CA6 R. 7, Appellant Br., at 20. The district court acknowledged that "it is getting more difficult for medical providers to find a usable site for the dialysis port" in its opinion, showing that it took Dr. Keller's affidavit into account. DE 61, Mem. and Order, Page ID 454; DE 54-4, Keller Statement, Page ID 408. Moreover, the district court confirmed that it considered both Moody's arguments and the record, both of which discuss Moody's medical condition at length, in denying his request for compassionate release.

Even if the district court had completely disregarded certain arguments made by Moody, as Moody contends, his appeal fails for the additional reason that a district court does not abuse its discretion when it merely refrains from discussing every single argument presented by a defendant. *United States v. Rafidi*, 842 F. App'x 1017, 1023 (6th Cir. 2021) ("[T]he district court does not abuse its discretion simply by failing to explicitly address each individual argument put forward by the defendant in support of a sentence reduction."); *United States v. Lapsins*, 570 F.3d 758, 773-74 (6th Cir. 2009) (similar). Here, the district court's opinion contained reasoned, factual justifications replete with references to the record,[5] the parties' briefs, and the § 3553(a) factors, which is enough to show that it did not abuse its discretion. *See Jones*, 980 F.3d at 1112 (requiring

---

[5] The record further supports that the district court did not abuse its discretion here. Moody was the leader of a drug trafficking conspiracy that involved at least eight other individuals. Moody conspired with his codefendants to possess with the intent to distribute illegal substances including heroin, cocaine, crack, fentanyl, fentanyl analogues, and methamphetamine. Moody also has an extensive criminal history dating back to when he was eighteen years old that includes nine convictions for similar drug offenses, as well as charges for obstructing justice, falsification, and having a weapon under disability. Although Moody clearly has a compelling medical condition, he nevertheless continued to commit the underlying crimes for years, no doubt aware of the potential repercussions given his criminal history. Considering the full record, Moody's arguments, and the balance of the § 3553(a) factors, the district court was well within its discretion to find that the § 3553(a) factors weighed against Moody's compassionate release. *See Elias*, 984 F.3d at 520.

that district courts supply "specific factual reasons" including "due consideration" of the § 3553(a) factors) (citation modified). In considering the § 3553(a) factors, the district court carefully examined the nature and circumstances of Moody's offense. The court emphasized the seriousness of the crime and its effect on Moody's community. It also analyzed Moody's history and characteristics, noting his extensive criminal record and its relationship to both his health and the health of his community. The court further considered the need for Moody's sentence, specifically the fact that he had served less than a quarter of his imprisonment term. The court went on to conclude that Moody had not established he was no longer a danger to the community, and therefore his early release would not be consistent with the considerations set forth in § 3553(a). And this breadth of analysis took place following a reasoned discussion of Moody's medical condition.

We have upheld denials of compassionate release based on virtually the same considerations weighed by the district court here.[6] *See, e.g.*, *United States v. Kimball*, 988 F.3d 945, 947 (6th Cir. 2021); *United States v. Wright*, 991 F.3d 717, 718-19 (6th Cir. 2021); *United States v. Wilson*, No. 24-1313, 2025 WL 1135719, at *2 (6th Cir. Mar. 5, 2025); *United States v. Sain*, No. 24-1246, 2024 WL 5486101, at *1 (6th Cir. Dec. 9, 2024). Reversing a district court's denial of compassionate release requires a strong showing and typically only occurs in cases involving exceptional inadequacies in the district court's reasoning. *See, e.g.*, *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. Jan. 19, 2021) (reversing the district court's two-line order denying compassionate release that cited only "the reasons stated'" in the government's brief). Moody does not successfully make such a showing in this case. In the end, the heart of Moody's

---

[6] Our circuit has also upheld denials of compassionate release based on even *less* information than the district court provided in its decision here; notably, in cases where district courts denied compassionate release through form orders. *See United States v. Harvey*, 996 F.3d 310, 314-15 (6th Cir. 2021) (discussing cases).

issue with the district court's denial is not with its actual failure to properly consider the § 3553(a) factors, but with how it balanced those factors – an argument outside the scope of our review. *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006) (confirming that a defendant's request for the appellate court to balance the § 3353(a) factors *differently* than the district court is "simply beyond the scope of our appellate review").

## IV.

For the foregoing reasons, we affirm the judgment of the district court.